**IT IS ORDERED as set forth below:**

**Date: April 26, 2019**



_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| DENISE BARROW, | ) | 18-64937-LRC |
| | ) | |
| DEBTOR. | ) | |

## ORDER

Before the Court are the Motion to Vacate Foreclosure Sale (the "Motion to Vacate") (Doc. 11), filed by Denise Barrow ("Debtor"), and the Motion for Relief from the Automatic Stay (the "Motion for Relief"), filed by Bridgepath Investment Group, LLC ("Bridgepath") (Doc. 41). The Court held a hearing on both matters on March 20, 2019.

Debtor asks the Court to set aside the foreclosure sale of her home by Ditech Financial LLC ("Ditech") to Bridgepath. Ditech and Bridgepath oppose such relief, and Bridgepath seeks relief from the automatic stay for the purpose of proceeding with the eviction of Debtor from the home. On the eve of the hearing, Debtor converted the instant case to Chapter 7 and sought a continuance of the hearing to permit the Chapter 7 trustee an opportunity to review the case and assert any interest he or she may have in these matters. The Court declined to grant a continuance after concluding that the Court could fashion relief in a manner that preserves the Chapter 7 trustee's right to intervene in these matters if appropriate. Following the hearing, Tamara Miles Ogier (the "Chapter 7 Trustee") was appointed as trustee in this case.

## I.    FINDINGS OF FACT

Ditech held a deed to secure debt on Debtor's residence, located at 4739 McEver View Drive, Sugar Hill, GA 30518 (the "Property"). Debtor failed to make any payments to Ditech from February until September 4, 2018, when Ditech foreclosed on the Property. During this time, Debtor was on the road working for her cousin and did not check on the Property or ask anyone to check her mail. Thus, Debtor did not learn about the planned foreclosure until late August 2018.

Debtor testified that on August 22, 2018, despite Debtor's failure to make payments to Ditech, a Ditech representative named "Britney" told Debtor that her loan would be reinstated. However, Debtor never received the paperwork to reinstate her loan and on August 24, 2018, she contacted Josh Lopez at National Homes Advocates ("NHA").

Lopez told Debtor that NHA would be able to stop the foreclosure for $1680, which Debtor paid in the form of a certified check on August 28, 2018. Lopez and NHA apparently led Debtor to believe that they were in contact with Ditech, negotiating on Debtor's behalf.[1]

On August 30, 2018, Lopez informed Debtor that she needed to file bankruptcy. Debtor was in Florida at the time and did not know the location of the nearest bankruptcy court. Thus, Debtor entrusted "Paul Francis," a friend of her brother, who was familiar with the area, to file bankruptcy on Debtor's behalf, but Francis delegated the task to someone else, whom Debtor knew, but whose name Debtor could not recall. After allegedly filing the bankruptcy petition, Francis gave Debtor a "Notice of Bankruptcy Case Filing" (the "Bankruptcy Notice"). Debtor faxed the Bankruptcy Notice to NHA, who in turn forwarded it to Ditech.

Debtor discovered that the Property was still scheduled for foreclosure. On September 4, 2018, Debtor contacted Ditech, which informed Debtor that the sale would not go through due to the pending bankruptcy. However, when Debtor called Ditech's lawyers, she was informed that her bankruptcy filing was invalid. As it turned out, the Bankruptcy Notice was a forgery. The Bankruptcy Notice identified Debtor's case as Case No. 18-18455-EPK, assigned to Judge Erik P. Kimball. A PACER[2] search reveals, however, the case number on the Notice of Bankruptcy is assigned to a different debtor

---

[1] Mr. Lopez was not called to testify and Debtor presented no evidence that NHA or Mr. Lopez had spoken to Ditech about Debtor's mortgage.
[2] "Public Access to Court Electronic Records (PACER) is an electronic public access service that allows users to obtain case and docket information online from federal appellate, district, and bankruptcy courts, and the PACER Case Locator." Administrative Office of the U.S. Courts, PACER Service Center, http://www.pacer.gov.

3

and a different judge. According to PACER, Debtor has never filed bankruptcy in the Southern District of Florida.

The testimony of Perry Taylor and Amirali Noorani established that, on September 4, 2018, at 11:52 AM, shortly after Ditech informed Debtor that the Bankruptcy Notice was a forgery, Ditech sold the Property at foreclosure to Bridgepath for $197,000, which was paid contemporaneously with five certified checks. At 2:09 PM, on that same day, Debtor filed for relief under Chapter 13 of the Bankruptcy Code. *See* Doc. 1.

## II. CONCLUSIONS OF LAW

In the Motion, Debtor initially asserted that the foreclosure sale of the Property was void due to having been conducted in violation of the automatic stay, citing *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982). The automatic stay prevents actions to exercise control over property of the estate and prevents the continuation of judicial proceedings against a debtor. *See* 11 U.S.C. § 362(a)(1), (a)(3). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Except those areas specifically addressed by federal statute, "property rights in a debtor's assets are determined in accordance with state law." *Ragsdale v. Blaw Knox Corp. (In re Hydro-Chem Processing, Inc.)*, 190 B.R. 129, 133 (Bankr. N.D. Ga. 1995) (citing *Butner v. U.S.*, 440 U.S. 48, 54-55 (1979)).

The evidence presented at the hearing showed that the foreclosure sale was cried, the high bid was accepted, and consideration was exchanged on September 4, 2018, at

4

11:52 AM, almost two hours before Debtor filed the instant bankruptcy case and that Debtor did not file a bankruptcy case in Florida prior to September 4, 2018. Under Georgia law, Debtor's equitable right of redemption in the Property was terminated when the Property was sold at auction and consideration was passed from Bridgepath to Ditech. *See In re Hinson Management Grp., Inc.,* 2012 WL 2175752, *2 (Bankr. N.D. Ga. June 8, 2012) (Mullins, J.); *Carrington v. Citizens Bank of Waynesboro,* 85 S.E. 1027 (Ga. 1915); *McKinney v. South Boston Sav. Bank,* 2714 S.E.2d 34 (Ga. App. 1980). Therefore, Debtor's interest in the Property, did not become property of her bankruptcy estate and was not protected by the automatic stay.

In Debtor's subsequently filed, *Initial Discussion Concerning Case Supporting Request for Continuance of Pending Actions* (Doc. 59), Debtor contends that the Court may set aside a foreclosure sale under 11 U.S.C. § 105(a). Under § 105(a), the court has the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105 (a). Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, . . . or constitute a roving commission to do equity." *U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). Debtor relies on *Krueger v. Great Pacific Money Markets, Inc. (In re Krueger)*, 69 B.R. 845 (Bankr. C.D. Cal. 1987), where the bankruptcy court set aside a foreclosure due to improper conduct of the foreclosing creditor. *Id.* at 849-50. In *Krueger*, the foreclosure occurred after debtors' case was dismissed because the foreclosing creditors had failed to notify the debtors of a rescheduled confirmation hearing as instructed by the court. The *Krueger* court found it would be inequitable to allow the

5

creditor to benefit at the debtors' and other creditors' expense "despite being the principal cause for debtors' failure to have their full day in court." *Id.* at 850.

In *In re Parks*, 2005 WL 6491918, at *3 (Bankr. N.D. Ga. Feb. 4, 2005), Judge Diehl declined to follow *Krueger* when the debtor sought to set aside a foreclosure sale that had been conducted while debtor's case was dismissed, but after debtor's motion to vacate the dismissal had been filed and called for hearing, but prior to the entry of a "no opposition" order by the court. *Id*. Judge Diehl refused to rely on § 105(a) to reimpose a stay retroactively after finding that, although the facts were "compelling and the consequences to Debtor substantial"—the property foreclosed was debtor's residence and had equity and debtor had been suffering from "an illness that require[d] daily outpatient treatment at a hospital"—the debtor had many options available her to avoid the foreclosure and did not avail herself of any. *Id*. Specifically, the debtor could have requested that the court hear the motion and make an oral ruling, she could have brought a "no opposition" order to the hearing and asked that it be signed that day, or she could have filed an adversary proceeding and requested a temporary restraining order to prevent the foreclosure while the motion to vacate dismissal was pending. In support of the ruling, the court noted that it was "obligated to follow 11th Circuit precedent, and according to [*In re Lashley,* 825 F.2d 362 (11th Cir.1987), cert. denied, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988), reh'g denied, 485 U.S. 1016, 108 S.Ct. 1493, 99 L.Ed.2d 720 (1988)], this Court does not have the authority to retroactively impose the automatic stay." *Id.* at *3.

As Judge Diehl found in *Parks*, the facts in this case are distinguishable from those in *Krueger*. First, although Debtor testified that a Ditech representative misstated Ditech's

6

intent to go through with the foreclosure, there is no evidence that Bridgepath made a similar representation or was even aware of Debtor's dispute with Ditech. Even the court in *Krueger* recognized that setting aside the foreclosure would have been inappropriate if the foreclosing party was a good faith purchaser. *Id.* at 849 (citing *Whitinsville Savings Bank v. Grundstrom (In re Grundstrom)*, 15 B.R. 832, 834 (Bankr. D. Mass. 1981) ("[S]ince the debtors have not challenged the good faith of the purchaser at foreclosure, nor [raised] any irregularities about the foreclosure sale . . . it is beyond this court's power to now set aside what has been rightfully and legally completed."). Thus, because Bridgepath purchased the Property in good faith, exercise of whatever equitable powers the Court may have would not be appropriate here. Second, the Ditech representative's statement that the company did not intend to go through with the foreclosure was apparently made before Ditech discovered that the Bankruptcy Notice was a forgery. Yet, Debtor asks the Court to hold Ditech responsible as though its misstatement was intentional. Finally, as in *Parks*, the Court notes that Debtor had options available to her to avoid the result in this case. The Court did not find Debtor's testimony explaining her attempt to file bankruptcy before the foreclosure to be credible or to support the conclusion that Debtor made a reasonable attempt to ensure that she filed a valid bankruptcy case prior to the foreclosure. In short, the Court concludes that the facts and equities of this case provide no basis to deviate from the Eleventh Court of Appeals' directive that this Court does not have the authority to retroactively impose the automatic stay.

Bridgepath seeks relief from the automatic stay to permit it to pursue its state law rights and remedies with regard to the Property. As the Court has found no basis upon

which to set aside the foreclosure sale, Bridgepath is the owner of the Property, and Debtor's interest in to the Property is merely possessory. Under the facts of this Chapter 7 case, the Court concludes that, pursuant to § 362(d), "cause" exists to grant relief from the stay to permit Bridgepath to proceed "with state court remedies to obtain possession of the [P]roperty." *In re Davis*, 1998 WL 34066146, at *3 (Bankr. S.D. Ga. Jan. 21, 1998).

### III.  CONCLUSION

For the reasons stated above, it is

**ORDERED** that Debtor's Motion to Vacate Foreclosure Sale (Doc. 11) is **DENIED**, and the Motion for Relief (Doc. 41) is **GRANTED**;

**IT IS FURTHER ORDERED** that, if the Chapter 7 Trustee would like to be heard on these matters, she may file an objection within thirty (30) days after entry of this Order. If no objection is filed, the Order shall become final as of that time.

END OF DOCUMENT